```
                 IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              - - -

ANDRE BOYER                   :  CIVIL ACTION NO. 12-2826
                              :
           v.                 :  Philadelphia, Pennsylvania
                              :  December 19, 2012
CITY OF PHILADELPHIA          :  3:00 o'clock p.m.
. . . . . . . . . . . . . . . .

                        TELEPHONE CONFERENCE
                BEFORE THE HONORABLE JAN E. DUBOIS
                UNITED STATES DISTRICT COURT SENIOR JUDGE

                              - - -

APPEARANCES:

For the Plaintiff:     ANDRE BOYER, Pro Se
                       1341 W. Clearfield Street
                       Philadelphia, PA  19132

For the Defendant:     STEVEN DICKINSON, ESQUIRE
                       Assistant City Solicitor
                       Philadelphia City Solicitor's Office
                       1515 Arch Street, 15th Floor
                       Philadelphia, PA  19102

                              - - -

Audio Operator:        Andrea Mack

Transcribed by:        Grace L. Williams, CET

(Proceedings recorded by For The Record Gold digital sound
recording; transcript provided by AAERT-certified
transcriber.)

                              - - -



                     Laws Transcription Service
                       48 W. LaCrosse Avenue
                       Lansdowne, PA 19050
                          (610)623-4178
```

1              (The following telephone conference occurred in

2    chambers at 3:00 o'clock p.m.:)

3              THE COURT:  This is Judge DuBois, good afternoon.

4              MR. BOYER:  Good afternoon, your Honor.

5              MR. DICKINSON:  Good afternoon, your Honor.

6              THE COURT:  I gather I have Andre Boyer who is

7    representing himself and Steven Dickinson representing the

8    remaining defendant, Lieutenant Karen Baldini.

9              MR. DICKINSON:  Yes, your Honor.

10             THE COURT:  We're going to conduct a preliminary

11   pretrial conference in the case of Boyer versus Lieutenant

12   Karen Baldini, the remaining defendant, in Civil Action No.

13   12-2826.  In the pretrial conference I'll hear what you have

14   to say about the case and then we'll schedule further

15   proceedings.

16             I understand that Mr. Boyer called my courtroom

17   deputy a short while ago and sought to postpone the

18   conference because he wanted appointment of counsel.

19             MR. DICKINSON:  Your Honor, I called your deputy on

20   Mr. Boyer's behalf.

21             THE COURT:  And who -- oh, this is Mr. Dickinson?

22             MR. DICKINSON:  Yeah.  I had spoken to Mr. Boyer and

23   I communicated his request for a continuance to obtain

24   counsel to your chambers.

25             THE COURT:  Oh, well, in any event I'll hear from

3

1    Mr. Boyer on that issue as well.  As I understand the case,

2    first of all, what's left of the case, I issued an opinion

3    and it was dated August 31st, 2012.  You both received that

4    opinion?

5          MR. DICKINSON:  Yes, your Honor.

6          THE COURT:  Mr. Boyer, do you understand the

7    opinion?

8          MR. BOYER:  No, sir, not that so no, sir.

9          THE COURT:  Well, you asserted a lot of claims and

10    if you read them I addressed them claim by claim and what's

11    left is a civil rights case against Lieutenant Baldini.

12          MR. BOYER:  Well, I didn't, I don't believe I got

13    that in the mail.

14          THE COURT:  You didn't?

15          MR. BOYER:  No, sir.

16          THE COURT:  Our records show that you got it.

17          MR. BOYER:  The piece of paper that I received from

18    you...

19          THE COURT:  And you don't have an opinion dated

20    August, let me check again, August 31st, 2012?

21          MR. BOYER:  No.  I'm looking at everything I got

22    from court and in my folder and I don't have it.

23          THE COURT:  Well, did you get a copy of the order

24    dated July 16th, 2012, which was, well, among other things,

25    it said "You shall either retain an attorney to represent you

4

1    on or before July 26th or file a response to the motion to

2    dismiss."  Did you get that order?  It was dated July 16th,

3    2012.

4              MR. BOYER:  I got that order, yes, sir.

5              THE COURT:  And I gather you have been unable to

6    retain an attorney?

7              MR. BOYER:  Yes, sir.

8              THE COURT:  Well, under the -- I'll hear from you

9    regarding the case.  I know what it's about, it concerns

10   racially, according to you, racially based discipline, a

11   six-day suspension without pay.  And you claim that this is

12   an adverse employment action taken against you as a result of

13   your race.

14             MR. BOYER:  Exactly.

15             THE COURT:  And I said in my opinion that that

16   allegation was sufficient to allow your civil rights case

17   against Lieutenant Baldini to go forward and the City is

18   representing Lieutenant -- the City -- City Solicitor is

19   representing Lieutenant Baldini.  So you have a valid claim.

20             MR. BOYER:  Yes.

21             THE COURT:  The other claims, and I analyzed them in

22   the opinion and will send them to you, I concluded they have

23   no merit.  And --

24             MR. BOYER:  Your Honor, the reason why I say it's a

25   defamation of character because disrespected me as a

1  Philadelphia Police Officer.  Five cases, this case has come

2  up in court on five different occasions in court because I

3  was suspended for this.  This actually came up five times in

4  court on five different sets of cases.

5         THE COURT:  Well, that's not set forth in your

6  complaint, you didn't say anything about that.  And I'm not

7  sure, I don't know what that --

8         MR. BOYER:  But that's because this didn't happen

9  until after, these allegations came up after.

10        THE COURT:  Well, I don't have any  idea what was

11 said to you.

12        MR. BOYER:  Well, Lieutenant Baldini signed, she

13 said that I falsified, willfully falsified documents and

14 stuff like that.  And that came up in court on five separate

15 different cases and that's why I put in there defamation of

16 character because it was not true.

17        THE COURT:  But you've just told me, you said that's

18 why you put in a claim for defamation of character.  That,

19 you've just told me that that occurred after you filed your

20 complaint so you didn't put in a claim --

21        MR. BOYER:  I mean what I'm saying is no.  They're

22 all, this happened, I was suspended and then I filed my

23 complaint, my complaint.  So while I was in court I had been

24 suspended for this and there is records of it.  And they, the

25 attorneys tried to use this to impeach me because it just

1    goes to my credibility in court.

2          THE COURT:  What you're saying -- what you're saying

3    is --

4          MR. BOYER:  Because of these actions that were taken

5    and I was suspended for later on came up in court.

6          THE COURT:  Well, that might very well be.  You

7    don't have a defamation case against the attorney and

8    Lieutenant Baldini didn't make these statements.  What you're

9    saying is that as a consequence --

10         MR. BOYER:  ...investigation, yeah.

11         THE COURT:  -- as a consequence of this discipline

12   when you had to testify in court on behalf of the City you've

13   been cross-examined by opposing counsel based on this

14   discipline.

15         MR. BOYER:  Yes, sir.

16         THE COURT:  Well, that's something that would be, I

17   think it's covered by the civil rights case against

18   Lieutenant Baldini.

19         MR. BOYER:  Okay, sir.

20         THE COURT:  But there's no defamation of character,

21   Baldini didn't say it.  And, well, I'll send you a copy of

22   the opinion.

23         MR. BOYER:  Yes, sir.

24         THE COURT:  I'm surprised that you didn't get it but

25   the opinion goes on to say the, among other things, that the

1   elements of a defamation claim are defamatory character of

2   the communication and there is no communication in this case,

3   publication by the defendant, its application to the

4   plaintiff and the understanding by the recipient of its

5   defamatory meaning, the understanding by the recipient that

6   it was to be applied to plaintiff and special harm resulting

7   to plaintiff from its publication and abuse of

8   confidentiality privileged occasion.

9           It seems to me that what you're saying is that

10  because of what Lieutenant Baldini did you've had challenges

11  to your credibility when you've been asked to testify.

12          MR. BOYER:  In court, yes, mm-hmm.

13          THE COURT:  I think that's covered by the existing,

14  the remaining claim.

15          Do you agree with that, Mr. Dickinson?

16          MR. DICKINSON:  Yes, your Honor.  I think it could

17  potentially be in the measure of damages.

18          THE COURT:  Yes.  All right, but I will send you a

19  copy of the opinion.

20          MR. BOYER:  Thank you...

21          THE COURT:  What we're talking about is suspension

22  for, I guess, seven days and what you've got to prove is that

23  Lieutenant Baldini did this for racial reasons.

24          MR. BOYER:  Mm-hmm.

25          THE COURT:  Not that you disagree with it, you've

8

1   got to show that she did it for racial reasons.

2           MR. BOYER:  Exactly.

3           THE COURT:  And I think that frames the issue and

4   with that as a basis I see no need to appoint counsel for

5   you.  The process is very slow, counsel are not paid, they

6   have to volunteer.  It slows the case down sometimes by as

7   much as six or eight months and I don't want to do that in

8   this case.

9           I think you are perfectly able to testify and

10  present your case if it comes to that so I'm not going to

11  appoint counsel.

12          But let's talk about the position of the City.  What

13  is the City's position on liability, Mr. Dickinson?

14          MR. DICKINSON:  Your Honor, for -- the City is

15  indemnifying Lieutenant baldini in this case.  I don't think

16  that the City is liable under the law --

17          THE COURT:  Oh, I'm sorry, I don't think --

18          MR. DICKINSON:  -- of Lieutenant Baldini.

19          THE COURT:  No, no, I'm talking not about City

20  liability, there's no Monell (ph.) claim.  The City is not in

21  the case.  I'm talking about your position, the City

22  Solicitor, on behalf of Lieutenant Baldini.

23          MR. DICKINSON:  Oh, my position is simple, your

24  Honor.  This is a case that uncovered that Officer Boyer had

25  been fraudulently, or not fraudulently, I don't know if

9

1   that's the case, but he had been essentially representing in

2   paperwork that he was the officer that was doing street level

3   narcotics testing when he's not qualified to do so and it was

4   inappropriate for him to do that.

5        I think that from what I've been able to gather from

6   speaking with the investigating officer I think that the

7   brunt of Officer Boyer's complaint is that there were some

8   other officers that were partnered with him while he was

9   doing these things and he was training these officers and

10   they weren't also disciplined for filling out this paperwork

11   at his direction essentially.

12        MR. BOYER:  No, each officer, (inaudible)

13   ...getting, I'm not a training officer, I'm -- they're police

14   officers like me.  I take one part of the paperwork and I do

15   it and they take one part of the paperwork and they do it.

16   It was basically what I was trying to involve (inaudible)

17   that basically she didn't want to hear it, neither one of

18   these guys were interviewed and (inaudible) ...she mentioned

19   about my payroll be in the system, neither one of those

20   police officers had a payroll so they had to use my payroll.

21        THE COURT:  I'm sorry, your payroll?

22        MR. BOYER:  Yeah, see, we have a PARS system and you

23   have to put in your payroll number in order to enter in the

24   evidence and do the document to send for this person to get

25   arrested.  And basically -- and it's called PARS.  And

1   basically the two partners that I had, they didn't have

2   payroll so they had to use my payroll because their payroll

3   wasn't put into the system yet so they could use it.

4           And I tried to explain that to Lieutenant Baldini

5   and she didn't want to hear it.  She said: It's your payroll,

6   bam, it's on you.  And when I even investigated even when

7   dropped it for asking questions or a supervisor asking

8   questions interviewing them.  She just said: okay, you know

9   what, you're the older guy here, it's all on you.  I went:

10  what, that's not a fair equal investigation.

11          THE COURT:  Well --

12          MR. BOYER:  -- interview and investigate everybody

13  involved, not just one person.  And I was the only person

14  interviewed or investigated.

15          THE COURT:  Well, I don't know whether they're

16  supposed to interview everybody involved.

17          MR. BOYER:  And if you look in the report which I

18  did, I was the only person interviewed, the only one.

19          THE COURT:  Are the others African-American?

20          MR. BOYER:  None, none were African-American, one

21  was Hispanic, one was white and two white supervisors.  And

22  nobody was interviewed, nobody.

23          THE COURT:  Well, Mr. Dickinson, you might want to

24  check on this.  I don't understand, I'm familiar with a PARS

25  report, I've seen enough of them but I've never focused on

1    the, quote, "payroll number," and Mr. Boyer's statement that

2    the other participants in these events had no payroll number

3    and therefore used his which meant he was taking

4    responsibility for what they said in their PARS reports.

5            Is that your claim, Mr. Boyer?

6            MR. BOYER:  Yes, sir, even with the property

7    receipts that she also brings, it was typed.  She never

8    interviewed those officers to say, hey, who typed this

9    property receipt.  She said bam, it's all on you.

10           And even when at first she refused to investigate

11   anybody else I even asked her, she asked a question about

12   evidence being left in the district safe, I said the City

13   won't pay an officer overtime when, so sometimes we leave

14   evidence locked in the district safe, that isn't what it's

15   there for, the rest of it's clear.

16           That is what the City put safes in every district

17   for, so an officer can't leave evidence in his locker or take

18   it home, therefore he for exigent circumstances he may be

19   allowed to leave it in the safe and have the corporal who's

20   assigned write on the S and R that Officer Boyer left such

21   and such in the safe at this time.  But when I brought that

22   for the interview of Corporal Nolan about evidence being left

23   in the safe she said not necessary to interview him because I

24   was a sergeant in the 39th or the 35th and we never did that.

25           I said: ma'am, this is what happened.  She never

1    interviewed it, she never  thought -- investigated.

2          THE COURT:  Well, are you hearing some of this for

3    the first time, Mr. Dickinson?

4          MR. DICKINSON:  No, your Honor, I spoke with the

5    investigator, Lieutenant Baldini, in this case.  I'm

6    confident that the evidence is -- that there would be no

7    evidence that these other comparators (ph.) engaged in

8    similar conduct to Mr. Boyer.  I think --

9          THE COURT:  Well, what he's -- go ahead.

10          MR. DICKINSON:  Lieutenant Baldini investigated

11    hundreds of PARS entries and found no similar, no similar

12    error in entry from any of these other officers to what Mr.

13    Boyer was doing.

14          THE COURT:  Well, Mr. Boyer says that some of these

15    PARS entries which were deemed to be his entries were not his

16    entries, they were the entries of other officers who used his

17    PARS, his payroll number.

18          MR. DICKINSON:  I think that she did follow up on

19    that but I don't know if there's any way, when police

20    officers investigate allegations of misconduct they do

21    essentially it's a factfinding.  You know if they can't find

22    positive evidence that something occurred there will be a not

23    sustained finding.

24          THE COURT:  Well, except that if a PARS report

25    bearing his payroll number is signed off on by another

1    officer there's an issue as to whether he's responsible for

2    that, isn't that so?

3              MR. BOYER:  It is and that was my whole initial--

4              THE COURT:  I understand that.  I don't need your

5    agreement, I'm just --

6              MR. BOYER:  No, no, I apologize, your Honor.

7              THE COURT:  I need Dickinson to say.

8              MR. DICKINSON:  Yeah, yeah, your Honor, I agree I

9    don't know specifically the facts in this case.  I don't

10   believe that -- I don't believe that any of these other

11   officers would have signed off on a PARS report that Officer

12   Boyer submitted.  I don't think that's actually how it works

13   is that the computer entry requires, I think the PARS number

14   or the payroll report is the actual signature.

15             MR. BOYER:  It is and that's exactly what I'm

16   saying.  They didn't have one to use and they used mine.  And

17   when I asked her did she investigate to see who actually

18   typed the report, not whose payroll it was but who actually

19   typed the report she did not do that initial investigation.

20             The two reports, the two PARS reports that are in

21   question I had two other officers at two different times

22   working with me.  They did not have a payroll --

23             THE COURT:  Well, who --

24             MR. BOYER:  -- therefore they had to use mine.

25             THE COURT:  Well, who --

1          MR. BOYER:  -- ...the PARS, they used my PARS, not

2     sign on who types the report --

3          THE COURT:  Are you saying --

4          MR. BOYER:  -- that's the question.

5          THE COURT:  Are you saying, Mr. Dickinson, that the

6     reports which resulted in your discipline were not prepared

7     by you?

8          MR. BOYER:  That's what I'm saying and --

9          THE COURT:  I said Mr. Dickinson, I'm sorry.

10         MR. BOYER:  -- that it's your payroll so therefore,

11    bam, it's on you.

12         THE COURT:  I'm sorry, Mr. Boyer, I misspoke.  I

13    said Dickinson but I meant you.  So you're saying that the

14    reports which led to your discipline bore your payroll number

15    but that the reports were prepared by --

16         MR. BOYER:  By another --

17         THE COURT:  -- by other officers and that no reports

18    prepared by you contained any reference to, well,

19    falsification of evidence.

20         MR. BOYER:  Exactly.

21         THE COURT:  Well, I think this warrants a little

22    investigation on your part, Mr. Dickinson.  I'm looking into

23    the facts of this case.

24         THE COURT:  I don't know how you can check this --

25         MR. BOYER:  Well, if -- can I (inaudible) ...listen

1    to me and investigate and interview those officers.  We're

2    talking about something that happened, your Honor, seven,

3    eight years ago that's just now coming up last year, last

4    year.  That's how far these things have went back, that's how

5    far they went back.  They didn't find anything recent, they

6    went back seven or eight years, your Honor.  These cases are

7    seven to eight years apart, it wasn't just something happened

8    last week, it's not something happened last year.  This

9    happened in '06 and '07, those are the only two cases.

10          Even the property receipts, your Honor, '06 and '07,

11   are '07.  These are not cases that are recent that happened

12   last year, a couple of months, this is something that

13   happened a long time ago.  Baldini investigated 200 and

14   something of my cases, she pulled 200 and something PARS to

15   try to find a differential.  And what she found is in '06 and

16   '07.  And I tried to explain to her if she did not want to

17   interview the people so I can help her understand what went

18   on and what happened.

19          THE COURT:  Okay.  Found, I'm noting pulled 200-plus

20   of your PARS reports, found two dating back to 2006 and 2007.

21   They were the basis of the discipline and you say they were

22   prepared by others.

23          MR. BOYER:  I'm saying, yeah, I let them use because

24   they didn't have a payroll --

25          THE COURT:  No, I don't need to have that again.

1          MR. BOYER:  Oh, okay, yes.

2          THE COURT:  -- just I want to hear your statement.

3   I should tell you we're being recorded so this is on the

4   record.

5          MR. BOYER:  Yes, sir.

6          THE COURT:  All right.  The PARS reports that were

7   the subject of your discipline you say were not prepared by

8   you, they were prepared by other officers who used your

9   payroll number.

10         MR. BOYER:  That is correct.

11         THE COURT:  Okay.  Well, if that's so you might end

12  up having a stronger case than appears from the face of your

13  complaint.  Okay.  Let me make a note.  Who used his payroll

14  number because they had no payroll numbers.

15         MR. BOYER:  Well, they had a payroll but it wasn't

16  put into the system so they could use the PARS.

17         THE COURT:  They had no payroll number that, well,

18  because their payroll number --

19         MR. BOYER:  Had not been entered into the system so

20  they can use the PARS system.

21         THE COURT:  -- was not entered, numbers were not

22  entered into the PARS system.

23         MR. BOYER:  I guess so they were not able to use the

24  PARS system sign on, sign onto the PARS system.

25         THE COURT:  Okay.  Well, I understand the case now,

1  at least your position, and, Mr. Dickinson will look into

2  that.

3         What we're going to do is schedule things.  Now you

4  got some notices of this conferences.  The notices sent you a

5  conference information report.  You didn't return it but that

6  doesn't matter.  Let's talk about a schedule.

7         Have you completed initial disclosure, Mr.

8  Dickinson?

9         MR. DICKINSON:  We have not, your Honor, but the

10  City is ready to do so.  I think I can get it done within a

11  week or sooner.  I'm just thinking about the holidays.

12         THE COURT:  Initial disclosure, we'll make it --

13  today's the 19th, we won't make it the 26th.  The last day

14  of, let's see, the 22nd is -- we'll make it the 28th.  Will

15  that give you enough time?

16         MR. DICKINSON:  Yes, your Honor.

17         THE COURT:  Do you have copies of these PARS

18  reports, Mr. Boyer?

19         MR. BOYER:  I have copies of nothing.  I need

20  discovery for everything.

21         THE COURT:  Well, we'll --

22         MR. BOYER:  And the officers.

23         THE COURT:  We'll order that.  The initial

24  disclosure should include, in addition to what's ordinarily

25  required, copies of the PARS reports at issue in the case.

1          MR. DICKINSON:  Your Honor, I may need more time

2     then to pick them up with my ID's.  And I could certainly

3     produce that discovery and put in a request but from what I

4     gathered from speaking with Lieutenant Baldini before she had

5     reviewed hundreds of PARS reports and it may take some extra

6     time just to compile them.

7          THE COURT:  All right, then we won't make that part

8     of initial disclosure but your discovery, we'll pick a

9     deadline for everything and then a deadline for this.

10          The discovery deadline that you suggested is four

11     months and that's fine.  Because of the holidays we'll use

12     the month of January, February, March and April.  So

13     discovery will continue until -- we'll make it April 26th.

14          Now copies of the PARS reports at issue in the case,

15     copies of all regulations, police regulations or similar

16     docs, I don't know whether they're called regulations or just

17     what they're called, relevant to the case.

18          Is there anything else you think you need, Mr.

19     Boyer?

20          MR. BOYER:  Something that I didn't get is how this

21     investigation initially started.  I need that also.

22          THE COURT:  Well, copies of the investigation file,

23     a copy of the investigation file.

24          MR. BOYER:  Yeah, yeah, copy of the investigation,

25     how did it come about for them to bring up this

19

1   investigation.

2        THE COURT:  Well, I don't know that that will be in

3   there but you'll get a copy of the investigation file.  Is

4   there anything else?

5        MR. BOYER:  And, no, sir, that's --

6        THE COURT:  That's a lot.

7        MR. BOYER:  Yeah.

8        THE COURT:  How much time do you need to produce

9   that, Mr. Dickinson?

10       MR. DICKINSON:  Well, I mean I have the

11  investigation, the regulations are probably referenced.  I

12  mean the regulations won't -- the regulations or the PDG

13  directive won't be hard for me to produce it but the PARS

14  reports, I'll have to figure out how many there are and

15  question how many were considered before I can answer that.

16       THE COURT:  Well, it's just the ones that led to the

17  discipline.

18       MR. DICKINSON:  Yes, I can certainly get that.

19       THE COURT:  And how much time do you need, a month?

20  is that enough?

21       MR. DICKINSON:  Yeah, I mean I can, yeah, if I have

22  30 days I think I can at least get a pretty good -- I mean

23  I'll conduct the investigation first going to initial

24  disclosure but the rest of the stuff I don't think I should

25  have too much trouble getting.  I could probably do it within

20

1    a month.

2           THE COURT:  All right, well, we'll give you until,

3    well, we can give you a little more than a month, we'll give

4    you until January 25th to get that.

5           All right, there won't be any experts in the case,

6    will there, Mr. Boyer?

7           MR. BOYER:  No, sir.

8           THE COURT:  Motions for --

9           MR. BOYER:  Know what?  Because I'm also requesting

10   that, yeah, I'm glad you brought that up.  I'm requesting

11   that someone from the Philadelphia Police Training Academy

12   who has knowledge of the PARS and property receipt.  That can

13   be pertinent.

14          THE COURT:  Well, you can ask for a deposition of

15   how that's handled and Mr. Dickinson will have to produce

16   such a person.  That's done under a Federal Rule of Civil

17   Procedure, it's 30(b)(6).

18          MR. BOYER:  30(b)(6) for that.

19          THE COURT:  And what you do is you ask for the

20   defendant to produce, well, it would be a corporate designee

21   of the City but you are the same, you'd be the lawyer to

22   handle it.  And you would ask by subject matter, someone who

23   can testify, who is familiar with and then you identify the

24   subjects.

25          MR. BOYER:  All right, thank you.

1          THE COURT:  All right, next is a motion for summary

2    judgment.  Do you think this is a case that will warrant a

3    motion for summary judgment, Mr. Dickinson?

4          MR. DICKINSON:  I do, your Honor, yes.

5          THE COURT:  How much time after the close of

6    discovery do you need?

7          MR. DICKINSON:  I'd ask for 30 days after the close.

8          THE COURT:  All right, that will take us to the 24th

9    of May.  And what you'll have to do is respond to the motion,

10   Mr. Boyer, and you just read the allegations and what is said

11   about the law and respond to it.  And I'll give you a month,

12   response in 30 days, that will take us to -- we're up to May

13   24th, that will take us to June 24th.

14         Next, exhibits marked and exchanged.  I'm going to

15   want some time to decide the case and we'll go to August,

16   August 23rd.  Since I have hundreds of cases I'll need at

17   least that much time.

18         Next, pretrial memos, plaintiff, August 30th.

19         Now your pretrial memo will be a little easier

20   than -- and all of this will be in an order, Mr. Boyer, so

21   you have to read the order and I'm going to send you a copy

22   of my opinion.

23         Your pretrial memo will have to include a summary of

24   the facts on which the claims are based, a statement of a

25   claimed liability of the defendant, a list of the witnesses

22

1    you'll call and a list of the exhibits that will be offered.

2    And defendant's pretrial memo shall be in accordance with the

3    rules.  August 30th for the plaintiff and I think we get,

4    we're into Labor Day, yes, so we'll give you a little more

5    time, Mr. Dickinson, we'll give you until September 10th for

6    defendant.

7              MR. DICKINSON:  Thank you, your Honor.

8              THE COURT:  All right, then I'm going to put the

9    case on the trial list and we'll put the case on the trial

10   list the end of September, September 27th.  Mr. Dickinson

11   says two days to try.  With the picking a jury and

12   instructing the jury I think three to four days.

13             All right, there are other things in the order.  At

14   least three days before the case appears on the trial

15   defendants must and you, Mr. Boyer, may but need not submit

16   proposed jury voir dire questions.  They are questions we ask

17   of a jury, proposed points for instructions to the jury, we

18   call them jury charge, proposed verdict sheet.

19             I don't need a trial memorandum from you but I'll

20   need one from the City and I want the City to present a

21   statement of the case which is a very brief statement of your

22   claims.  You may submit it but I want the City to submit it.

23             I'm not going to burden you with all of this.  I'll

24   see to it that these presentations are appropriate for both

25   of you but from the City a statement of the case which should

1    in a sentence or two state the basis of your claim and if

2    that's wrong I'll correct it, the essential elements of your

3    claim which means what you must prove by a preponderance of

4    the evidence in order to prevail and then the City's position

5    on liability.  They will say you were properly disciplined,

6    as an example.  And if they have any affirmative defenses as

7    to which they have the burden of proof they'll have to tell

8    me what those affirmative defenses are and the essential

9    elements of each one.  That in a nutshell is the scheduling

10   order.

11           The trial listing date is not a trial date, it's

12   just a trial listing date, that's the date it goes on the

13   trial list.  You'll be notified of a trial date thereafter.

14           The only other thing I'm going to schedule is a

15   settlement reporting date.  I want you to talk settlement,

16   particularly after you get these PARS reports, this would be

17   after, I guess it's the 20-- what date did I pick?  January,

18   I can't even read my handwriting, I think it's January 25th.

19           MR. DICKINSON:  Yes, your Honor.

20           THE COURT:  Thereafter, and I'll pick a date

21   thereafter, I think you ought to talk and then jointly report

22   to me in a letter on which Mr. Boyer signs off, telling me

23   whether you've settled the case and, if not, telling me what

24   you think about -- we call it alternative dispute resolution.

25   It's really a settlement conference before a Magistrate

24

1    Judge.

2           It would require the two of you to go to -- come to

3    the courthouse and meet with the Magistrate Judge.  So we'll

4    pick that settlement report date.  I think it should be

5    certainly after January 25th.  The discovery cutoff at the

6    end of April, I think maybe sometime in early March.

7           What do you think of that, Mr. Dickinson?

8           MR. DICKINSON:  I'm fine with that, your Honor.

9           THE COURT:  And it's an on-or-before date so if it's

10   too late you'll tell me.  It's March --

11          MR. BOYER:  Your Honor -- I'm sorry, I didn't mean

12   to cut you off, your Honor.  In March it's probably going to

13   be a bad time for me because I take -- I have a vacation

14   time.  It's called to use it or lose it and I have a month

15   and a week that I have to use and I usually use it in the end

16   of February and the whole month of March.

17          THE COURT:  Okay.

18          MR. BOYER:  I schedule, I'm planning on going to

19   Thailand for at least three weeks.  I don't know but it will

20   be the beginning of March or the end.

21          THE COURT:  Where are you going?

22          MR. BOYER:  Thailand.

23          THE COURT:  Ireland?

24          MR. BOYER:  No, Thailand, Thailand --

25          THE COURT:  I got it, okay.

1          MR. BOYER:  I don't know if it's going to be either

2   the end, the beginning of March or the end of March, I'm not

3   sure yet.  But I am going to be taking that scheduled

4   vacation time around that time for the month of March.

5          THE COURT:  Okay.  Then what do you think, do you

6   want to try to push it up to late February?  Is that going to

7   give you enough time?

8          I'll tell you one thing, Mr. Dickinson, if it's too

9   early because of the plaintiff's vacation schedule, all you

10  do is write me.  This is one time when you do the calling.

11  You tell me: Judge, we were too optimistic, it's too early.

12  Plaintiff is going to be away.  We propose reporting to you

13  if it won't work in late February before he goes, end of

14  March or whenever.

15         MR. DICKINSON:  Fair enough, your Honor.

16         THE COURT:  I'd rather do it sooner rather than

17  later.  When do you propose --

18         MR. BOYER:  Yes.

19         THE COURT:  -- when do you plan to leave on your

20  vacation?

21         MR. BOYER:  I'm going to take my vacation in March

22  so I don't know if I'm going to be leaving the first, whether

23  it's going to be the first week or maybe the last three weeks

24  of March.

25         THE COURT:  Well, I'll tell you what we'll do, we'll

1   make it February, I'm thinking of the last week in February.

2   February 25th and if you leave before then you've got to get

3   in touch with Mr. Dickinson and report before then.

4          MR. BOYER:  I don't think I will though.  Like I

5   said...

6          THE COURT:  And, Mr. Dickinson, this might be too

7   early for you and if it is, just tell me.

8          MR. DICKINSON:  Yes, your Honor.

9          THE COURT:  And suggest another date.

10         All right, that's all I think I have to schedule.  I

11  can tell you that this conference has been most helpful.  It

12  has enabled the plaintiff, Mr. Boyer, to explain his position

13  and now you know it.  It casts the case in a slightly

14  different light for me, I'm not the one who counts at this

15  juncture, you are, Mr. Dickinson.

16         And if it changes the City's analysis and I don't

17  know whether it will, and I keep referring to the City.  I

18  mean you as the City Solicitor or Assistant City Solicitor

19  handling the defense of Lieutenant Baldini, then --

20         MR. DICKINSON:  I am, your Honor.

21         THE COURT:  You don't have to wait until February

22  25th, that will be an on or before date.  So you can advance

23  that date, you can't postpone it.  Okay.

24         I'll issue an order, you'll get it shortly.  I'm

25  also going to send you, Mr. Boyer, a copy of that August 31st

1  opinion --

2          MR. BOYER:  Thanks, your Honor.

3          THE COURT:  -- although you should have gotten it.

4  Is there anything else that needs to be done at this time?

5  Mr. Boyer, anything else?

6          MR. BOYER:  No, sir.

7          THE COURT:  Mr. Dickinson?

8          MR. DICKINSON:  I don't believe so, your Honor.

9          THE COURT:  All right, one last thing.  I think I

10  mentioned this.  This conference is being recorded and we

11  will prepare a transcript which will be filed with the Clerk

12  of Court so there will be a record of it.

13          My order will cover all of the dates and what the

14  City was ordered to do.  I keep saying the City, you'll have

15  to, Mr. --

16          MR. DICKINSON:  Don't worry, your Honor, I

17  understand what you mean.

18          THE COURT:  Well, what the defendant is required to

19  do but if there's any question you can go back to the

20  transcript.

21          I think it's been a very fruitful conference and I

22  thank you both.

23          MR. DICKINSON:  Thank you, your Honor.

24          MR. BOYER:  Thank you.

25          THE COURT:  On that note I'll end the conference.

1   Thank you both very much.  Have a happy holiday.

2           MR. DICKINSON:  You as well, your Honor.

3           THE COURT:  Right, bye now.

4           MR. DICKINSON:  Good-bye.

5           (Conference concluded at 3:45 o'clock p.m.)

6                         *  *  *

CERTIFICATION


I hereby certify that the foregoing is a correct
transcript from the electronic sound recording of the
proceedings in the above-entitled matter.


S:/Geraldine C. Laws, CET          Date 1/4/13
Laws Transcription Service